481 A.2d 355

**In re Petition of Thomas W. POPE and Elizabeth L. Pope, his wife, For the Opening of A Private Road in Lykens Township, Dauphin County, Pennsylvania**

v.

**Charles E. MUTH and Alda E. Muth, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed Aug. 31, 1984.

Petition for Allowance of Appeal Denied Feb. 19, 1985.

W.H. Clay Keen, Harrisburg, for appellants.

Paul E. Baker, Harrisburg, for appellees.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants challenge the lower court's order authorizing appellees' placement of utilities within a private road to be constructed on appellants' property. We agree with the lower court's determination and, accordingly, affirm.

In late 1980, appellees petitioned for the right to construct a private road from their property through appellants' property, in order to gain access to a main road. A

Board of View, appointed pursuant to 36 P.S. § 2731,[1] recommended that appellees be permitted to build a 25'-wide road and to place utilities therein. The lower court, upon review, determined that a 15'-wide road would suffice and upheld the authorization for utilities.

In the instant appeal, appellants do not challenge appellees' right to construct the road. Rather, they assert that 36 P.S. § 2731, which authorizes private roads, does not discuss utilities. Hence, they argue that the lower court acted contrary to the statute in allowing appellees to place utilities in the road. We disagree. Those petitioning for permission to construct a private road must first successfully meet the requirements necessary for the appointment of a Board of View. *See In re Private Road in Nescopeck Township*, 281 Pa.Superior Ct. 341, 422 A.2d 199 (1980). Furthermore, because "the determination of necessity is a factual matter to be [made] by the Board, ... the trial court['s] ... review is limited to a confirmation or a rejection of the Board's report." *Mattei v. Huray*, 54 Pa. Commonwealth Ct. 561, 566, 422 A.2d 899, 901 (1980). Here, the Board of View concluded that the placement of utilities was necessary to appellees' use of the road. The lower court, finding that the necessity of the private road had been established, accepted the conclusion that the place-

1. 36 P.S. § 2731 provides:
   The several courts òf quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons, associations, partnerships, stock companies, or corporations, for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway, or upon the petition of the chief executive officer of any executive or administrative department of the State Government for a road from any public highway across any lands of any person, association, or corporation to the boundary line of any lands owned, controlled, or administered by the Commonwealth, direct a view to be had of the place where such road is requested, and a report thereof to be made, in the same manner as is directed by the said act of thirteenth June, one thousand eight hundred and thirty-six. 1836, June 13, P.L. 551, § 11; 1901, April 4, P.L. 65, No. 32, § 1; 1927, April 28, P.L. 485, § 1.
   (footnote omitted).

ment of utilities constituted a reasonable use of the road. We agree with the lower court that the necessity of personal and vehicular access to appellees' property reasonably includes access to modern conveniences. As the lower court states: "To grant the petitioners the right-of-way partially, on the basis of their future intended use of building a home, and then to bar them from installing utility lines, would be unreasonable. It would defeat the entire purpose of granting the right-of-way." (Lower Court Opinion at 4).

*Dowgiel v. Reid,* 359 Pa. 448, 59 A.2d 115 (1948), upon which the lower court relies, is analogous to the instant case. In *Dowgiel,* the petitioners had an easement in the form of a contract over the private road. Thereafter, they dug holes in the road for the purpose of installing poles for the transmission of electricity. The court queried whether "the right to use a road to and from one's habitation includ[ed] the right to erect poles ... for the transmission of electricity to and from that habitation" *id.,* 359 Pa. at 451, 59 A.2d at 117, and determined that a reasonable use of the road included the ability "to obtain something which is essential to the liveableness of the home, to wit, electricity ...." *Id.,* 359 Pa. at 460, 59 A.2d at 121. Although a contract does not exist between the parties to the instant case, it would be entirely unreasonable to grant appellees permission to construct a road to connect their future home with a main road and then to deny them the ability to live in the home in a manner consistent with accepted, modern standards. Accordingly, we agree with the lower court that the *Dowgiel* reasoning is equally applicable to the case at hand.

Appellants place great reliance on *Little Appeal,* 180 Pa.Superior Ct. 555, 119 A.2d 587 (1966), arguing that according to *Little,* appellees must demonstrate a "present necessity" for the placement of utilities on the road. Appellants, however, fail to distinguish fully the facts in *Little*

from the present facts. In *Little*, the petitioner had access from her house to a main road by virtue of an existing private road. She petitioned for an additional road over the respondents' property so "that the 25-acre portion [of her land] adjoining [respondents'] land [could] suitably be developed into building lots. . . ." *Id.*, 180 Pa.Superior Ct. at 557, 119 A.2d at 588. The Board of View in *Little* found "that the existing road of appellant [was] sufficient and convenient for the *present* use of her land . . . but concluded as a matter of law that it would not appropriate [respondents'] land for the *contemplated* subdivision and commercial enhancement of the 25-acre portion." *Id.*, 180 Pa.Superior Ct. at 558, 119 A.2d at 589. The court concluded that, in admitting that she did not want to invest funds into the subdivision until assured of the road, the petitioner did not "supply the strict necessity required by the Act and would not justify the viewers in ordering the [respondents] to give up their land *now* to provide access for a contemplated use of the land by [the petitioner]. *Id.*, 180 Pa.Superior Ct. at 559, 119 A.2d at 589. In the instant case, there is no doubt that appellees have demonstrated the strict necessity required by the statute because there is, at present, no access to the main road from their property. Therefore, *Little* is distinguishable because the petitioner in that case already enjoyed access from her property at the time she requested the view. Hence, the present necessity" test discussed by appellants relates to a petitioner's basic need for a private road, and not to the many purposes such a road may serve.[2]

Finding no merit in appellants' contention, we affirm the order entered below.

Affirmed.

**2.** Appellants mistakenly stretch the application of the "eminent domain" concept to the case at hand. *See Mattei v. Huray*, 54 Pa. Commonwealth Ct. 561, 566, 422 A.2d 899, 901 (1980) ("Although the proceedings to take land for a private road are clearly in the nature of eminent domain, *Little Appeal*, 180 Pa.Super. 555, 119 A.2d 587 (1956), the legislature has provided a statute governing public and private roads that is wholly independent of the Eminent Domain Code.").